391 A.2d 1002

**COMMONWEALTH of Pennsylvania**

v.

**Clair D. BLAIR, Appellant.**

Supreme Court of Pennsylvania.

Argued March 14, 1978.

Decided Oct. 5, 1978.

Michael J. Wherry, Public Defender, Mercer, for appellant.

Samuel J. Orr, IV, Dist. Atty., David B. Douds, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

PER CURIAM:

Appellant, Clair D. Blair, was convicted of voluntary manslaughter in the Court of Common Pleas of Mercer County. Post-verdict motions were denied. Appellant was sentenced to five to ten years in prison. He appeals the judgment of sentence.

The case arose out of the shooting death of appellant's fiancee, Patricia Salem. Appellant raises three allegations of error:

1. Appellant argues that the indictment should have been quashed on due process grounds because he was not charged until five months after decedent's death.

2. Appellant argues that the court below improperly limited his cross-examination of the Commonwealth's witness, Georgia Jones.

3. Appellant argues that the court below erred in failing to suppress evidence obtained by a search of his home. Appellant's argument is two-pronged: first, that he did not voluntarily consent to the search of his home; and, second, that even if he *did* voluntarily consent to the search, his consent was limited to a search for weapons, not a general search of the premises.

We have reviewed the above allegations of error and find them to be meritless.

Judgment of sentence affirmed.

MANDERINO, J., files a dissenting opinion in which ROBERTS, J., joins.

MANDERINO, Justice, dissenting.

I must dissent. Appellant today appeals his conviction of voluntary manslaughter for the death of Patricia Salem. Salem died of a gunshot wound of the head. She was shot while in her home which she occupied with appellant and her two small children. Appellant argues that the trial court erred in limiting cross-examination of the prosecution's witness, Georgia Jones. I agree.

It is clear that ordinarily the scope of cross-examination is limited to matters brought out in direct, *Lenahan v. Pittston Coal Min. Co.,* 221 Pa. 626, 70 A. 884 (1908); however, an exception exists where the cross-examiner seeks to show bias on the part of the witness. *Com. v. Cheatham,* 429 Pa. 198, 202–3, 239 A.2d 293 (1968). *Lenahan v. Pittston Coal Min. Co., supra; Commonwealth v. Farrell,* 187 Pa. 408, 41 A. 382 (1898). We have said: "[i]t is beyond question that the interest in or bias of a witness towards either side of a lawsuit may be exposed upon cross-examination . . . ." *Downey v. Weston,* 451 Pa. 259, 263, 301 A.2d 635, 639 (1973); *Commonwealth v. Hayward,* 437 Pa. 215, 217, 263 A.2d 330 (1970). The offer of proof made by appellant's counsel contained the main circumstances from which bias could be proven.

The facts which led to appellant's conviction are as follows:

The prosecution's principal witness was the sister of the decedent. She testified at trial about an incident which occurred at a wedding reception attended by the decedent, appellant, and the witness' parents. Jones testified that appellant was drinking and she described his condition as "pretty well loaded." While dancing with Jones, appellant allegedly made *sexual* advances toward her and suggested that they take a trip to California. On cross-examination, defense counsel questioned Jones about the wedding incident:

Q. And you recovered from your shock later in the evening, enough to go out into the parking lot with a, Mike Funk, is that not correct?

MR. ORR: Objection, your Honor.

Q. Is that not true?

MR. ORR: Object to that, too, she's a single woman.

THE COURT: I think it's a *collateral* matter.

MR. WHERRY: No, your Honor—

THE COURT: Excuse me, I'll make the rulings, you try the case and I'll do the ruling and we'll get along.

MR. WHERRY: Yes, your Honor.

THE COURT: When she says she was in a state of shock, I am sure she is using that in a layman's term, it means she was surprised.

MR. WHERRY: May I make an offer of cross-examination at sidebar, your Honor?

THE COURT: Yes.

At this point, the court held a side-bar conference. Defense counsel made a *complete* offer of proof that on the evening of the wedding, the accused and the decedent went out to the car and found Jones and Mr. Funk engaging in sexual intercourse. Additionally, two weeks before decedent's death, Jones asked to come to the home shared by appellant and decedent because she was beaten up by her father. Appellant refused Jones entry. This refusal was based on

the sexual encounter between Jones and Mr. Funk. The offer of proof described above illustrates *why* the witness might want to testify against the appellant.

The law recognizes the slanting effect which emotions and human feelings have upon human testimony. McCormick, *Handbook of the Law of Evidence* (2nd Edition 1972). Even if the testimony in cross-examination would have been embarrassing to Jones, appellant's right to cross-examination cannot be abridged. *See Commonwealth v. Cheatham, supra.* In *Cheatham,* this Court concluded that when the trial judge refused appellant his right to cross-examine the prosecution's witness on bias, such refusal constituted reversible error.

The decedent in *Cheatham* was stabbed to death in a bar. On cross-examination, appellant sought to cross-examine the prosecution's principal witness about an alleged homosexual affair between the witness and a third party. This alleged affair would have supported appellant's contention that ill-feelings existed between the witness and the victim. This Court concluded that the accused should have been allowed to explore the roots of possible bias, *Id.* 429 Pa. at 202, 239 A.2d 293.

Similarly, the emotions of the principal witness in this case are not merely a collateral matter. The proposed cross-examination was not merely collateral because it would have explained the reasons for the witness' direct testimony or at least destroy its effects. Henry, *Pennsylvania Evidence,* § 814 (1953). Specifically, the portion of the offer of proof concerning appellant's sexual advances as well as the incident two weeks later is sufficient to show those roots of bias which appellant should have been allowed to explore. Therefore, when the trial court refused appellant his right to cross-examine Georgia Jones on bias, this was reversible error.

ROBERTS, J., joins this dissent.